I will turn to the next case on our calendar, which is Laurel Ramsey v. Commissioner of Social Security. I see we have Mr. Ratchford there. I assume opposing counsel is also available? Yes. Okay, you may proceed. Thank you, Your Honor. May it please the Court, James Ratchford, attorney for the plaintiffs and Commissioner of Social Security's denial of her Title II Social Security claim and the Western District's decision upholding that denial. This Court must determine whether the ALJ's determination decision is supported by substantial evidence and whether the ALJ committed legal error by failing to follow the Commissioner's own rules and regulations. First we argue that the new evidence from treating neurosurgeon Dr. Lewis, including his evaluation of imaging studies prior to the ALJ's decision and his retrospective opinion as to her condition, as well as his surgical and post-surgical notes, is relevant to the period of issue and merits remand. No doctor in the record had reviewed these reports prior to Dr. Lewis, leaving the ALJ's lay interpretation unsupported by medical opinion. The Appeals Council should have remanded for this under 20 CFR 404-970-85. This evidence not only affects the RFC assessment, but also the credibility assessment regarding her condition of pain. Dr. Lewis reviewed two MRIs that both predated the ALJ decision and the results of her prior surgery in rendering a medical opinion and prognosis that her condition was more severe than the ALJ found. Counsel, what do you think in the additional information would require us to overturn the findings of the ALJ? The ALJ essentially stated that she had medical improvement coming from her past surgery and would be able to return to work in light of her condition based on the ALJ's interpretation of a recent MRI. The doctor reviewed that exact same imaging, those exact same raw medical findings, and came to the opposite conclusion. The judge in this case is really not allowed to play doctor. The regulations allow the judge to weigh medical evidence and to weigh medical opinions, but not to substitute his own interpretation of raw data for a qualified medical opinion. Dr. Lewis's opinion in his 2017 report contradicted the ALJ and was new medical evidence that should have been properly considered in rendering a determination. Thank you. Dr. Lewis did review those two MRIs that preceded the ALJ decision. Our second argument is that the ALJ's decision is not based on substantial evidence, as there was no suitable medical opinion to support the ALJ's function-by-function RFC finding. In fact, the ALJ arrived at his finding by interpreting, as I said, raw medical data and rejecting all relevant medical opinions. Twice in the decision, the ALJ indicated that he was interpreting raw data and thus playing doctor. In the record at page 53, reading directly from the MRI, the ALJ stated, these mild to moderated findings on objective tests supported the RFC, the residual functional capacity assessment. Why isn't that, as I understand it at least, but maybe I'm wrong, just reading the results that were provided by the radiologist? The radiologist did provide those results, but the radiologist is providing an opinion not as to the nature of the limitations, but simply as to what is on the imaging. The radiologist looks at the image and translates it to words, not really much more. Okay, but why is that an interpretation? That's just literally almost reading the MRI results and drawing some inferences, but it's not a separate interpretation from what the radiologist provided. Right. Well, I would say, first off, we're looking at a question of expertise, and the ALJ is a layperson when it comes to evaluating medical evidence. Yes, ALJs have extensive experience in looking at this from different cases, but ultimately an ALJ does not have the training of a medical doctor in terms of interpreting what a finding on an MRI leads to in terms of diagnosis and prognosis. Dr. Lewis is a neurosurgeon, and as such is in a better position than the ALJ to interpret these results. Dr. Lewis also had questions as to whether the radiologist had interpreted it correctly, and according to his clarification, which the ALJ did not do. Continue. Well, actually, can I go back to your first point? I apologize for backpedaling here. Yes. About the Dr. Lewis materials. Even if the Appeals Council, even if the agency was incorrect in interpreting that information that is applying to the relevant time period, even if we find that that was a mistake, don't you really still have to show that as a consequence, if it were properly considered for the relevant time period, that the ALJ's conclusions would still have been contrary to the weight of the evidence? I mean, don't you really still have to show that things would be different, not just that they considered it in too limited a fashion, but that it would have mattered? Yes. Well, there's actually a lot, too. There's a lot of ways that it could change. What we have when we go from an RFC to the final conclusion of the decision, the RFC is important and the critical finding, but it's not the end of the analysis. When we get from the RFC, we then go to a vocational expert in order to answer the... The administration has the that a person can do certain specific jobs. And so we need to go from specific limitations to how those limitations can be applied in the workforce. And if those limitations are different than the jobs that the ALJ gave are going to be different. So the judge gave her a strict sedentary RFC, which was, you know, sitting six hours, standing, walking two hours, but also gave minimal limitations to her upper extremities, which mind you is separate from Dr. Lewis's opinion. But any of these limitations could alter what goes into that RFC and therefore would require a new vocational expert's finding. Finally, Dr. Lewis talked about her subjective reports of pain. Dr. Lewis... My findings from evaluating these MRI give credibility to her assessments of pain. In his decision, the ALJ dismissed her complaints of pain, essentially saying that that was not a credible complaint. And Dr. Lewis contradicts that. How do we know, just to follow up on that question from Judge Nardini, it's a slightly different direction, I think. How do we know that the ALJ in fact ignored Dr. Lewis's assessment? Well, he didn't see it. It was rendered after the decision. So when... I'm just looking at this record and I'm trying to maybe unpackage this for me. At 53 of the appellate record, or appeals record, it says further, the undersigned consider the newer medical evidence that indicates... this is at the bottom... that indicated the claimant had some worsening of her impairment and diagnosis of failed back surgery. What does that refer to? I'm actually not entirely sure. I thought that was referring to the MRI, but really just most recent records. That was not Dr. Lewis's report. What was the exhibit citation on that? That was... Well, Dr. Lewis's report was 2017. It was early 2017, so it posted the decision. But I guess my question is, isn't that the same, more or less qualitatively, the same thing that Dr. Lewis says in 2017? Not... well, no, not entirely. The central theme is the same. The central theme is worsening of the condition, yes. And in fact, the ALJ is coming to the direct opposite conclusion. The ALJ says that there is a medical improvement going on, which... Of course, of course. I thought your argument was premised on the notion that the ALJ had, in effect, rejected Dr. Lewis, but more importantly, had rejected the central theme of Dr. Lewis's report. Understanding that the ALJ at that point didn't have the report itself, but the ALJ considered the possibility that the surgery didn't work and that there might have been a worsening. Well, the ALJ felt that the surgery could be corrected with further surgery, which is logically inconsistent. It doesn't make sense to say that a person now has a sedentary RFC and simultaneously say that she needs further surgery. It simply doesn't make sense. But I would say it's a question of the degree of the deterioration. The evidence that was available at the time of the ALJ decision did show that there was deterioration. It really did not show that there was medical improvement. So how the judge came to that conclusion is, frankly, mysterious to me from my own review of the record. Okay. Counselor, your time has expired. You have reserved three minutes for rebuttal. We'll hear from the Commissioner. May it please the Court, I represent the Commissioner of Social Security. Your Honors, the ALJ's decision here is supported by substantial evidence and should be affirmed. Ramsey first argues that the additional evidence from Dr. Lewis submitted to the ALJ's findings and the overall outcome of her disability claim. Ramsey's argument must fail because the Appeals Council properly determined that Dr. Lewis's post-decision evidence did not relate to the relevant period, which lasted only through August 2016. Importantly, the earliest evidence submitted to the Appeals Council from Dr. Lewis was dated seven months after the ALJ's decision. What's more, none of the additional evidence meaningfully spoke to Ramsey's functioning during or related any functional limitations back to the period at issue. The evidence submitted demonstrates a worsening of Ramsey's back condition following the ALJ's decision due to an intervening injury. Can I just ask you there about the point you just made, that the reports were dated in 2017, right? The ones we're talking about? Correct. And you're saying they don't relate back, right? Correct. I thought, and correct me, I may be reading this wrong, that the report contains an analysis of the April 2016 MRI. Is that correct? Correct, Your Honor. And that MRI falls within the previous period of time that is subject to discussion here, right? Correct, Your Honor. I'll make two points about that. First, this is not the situation where Dr. Lewis was a longtime treating physician who submits an opinion that postdates the ALJ's decision that says these are her limitations as of April 2017. And furthermore, those limitations have been in effect since I first saw her in, you know, whatever it is, 2000. Dr. Lewis says none of that. To the contrary, at that 2017 visit, he says that Ramsey had a, quote, recent fall which aggravated her pain severely. That's page 11 of the administrative record. He also notes a January 2017 CT scan which shows a new spinal condition that was not ever imaged during the relevant period. Pseudoarthrosis, it's called. He then also does see that 2016 spinal MRI that was already in the record. So we don't dispute that he saw evidence that was within the relevant period. But then he says, he doesn't say her condition has always been this bad and therefore she cannot lift five pounds. Her condition has gotten worse. He chalks it up to a recent injury. What does it mean to say that it does not relate to the relevant time period? Because in one sense, facially, it relates at some level to the 2016, or whenever it was, the relevant time period. Yes, Your Honor. He talks about that period. Correct. But he at no point says that during the relevant period she was limited in any way more that exceeds the RFC finding. He does not say that I've reviewed this 2016 MRI and therefore believe that in 2016 she was unable to do even sedentary work. He says nothing of the kind. Just answer my question then. What, for our purposes, does it mean when the ALJ or the Appeals Council says it does not relate to the relevant time period? It's something of a term of art. Is that a legal term? Correct, Your Honor. It's something of a term of art. A legal term, but a term of art. Let's call it an administrative shorthand for when a doctor will specifically tie an opinion back to an earlier time period. Where would I be able to find this definition, this term of art in the regulation or in anything? Your Honor, the Appeals Council's regulations on what they have to consider,  but the question still remains is whether that 2017 statement by Dr. Lewis renders the ALJ's decision contrary to the weight of evidence. We would argue that it most certainly does not because as Your Honor's pointed out before, the ALJ acknowledges that her back condition did not magically improve with this surgery. In fact, he notes the April 16, 2016 MRI, as well as evidence of worsening of that condition and already incorporated that into the RFC. So is your argument that we should, I'm just going back to this relate to the relevant time period, because one way of looking at that is that it does relate and so there was an error committed by the Appeals Council, but you're telling me that it's got some special administrative residence in the context of these cases. So you're also asking us to defer to that assessment or what are you asking us to do? To affirm the ALJ's decision precisely because the ALJ, the Appeals Council did consider that evidence and correctly determined that it did not meaningfully comment on the relevant period. He doesn't, Dr. Lewis does not say that any of these limitations were present during the limit, during, he, first of all, he doesn't say she is incapable of the less than sedentary RFC, even after the... You mentioned this other requirement, meaningfully comment on, where does that come from? This, this is just an analysis of how, how one would arrive, how a review in court would arrive at the decision that a, that the evidence submitted after the ALJ's opinion would make it contrary to the weight of evidence. I would refer you both to this court's holdings in Rutkowski and in Bushey, both of which are cited in the Commissioner's brief. So am I understanding then these are sort of two distinct arguments you're making. One is they did not, the Dr. Lewis report that was submitted to the Appeals Council did not in the condition. And I understand we can debate what that means. You seem to have a different understanding or you're starting a particular understanding of what relate means, but it's a separate question. I would take it that even if one agrees with the petitioner here, that it does relate back because it talks about, say the MRI from April, 2016, and the Appeals Council was wrong to say that it didn't relate back. It didn't really, even if one considered it, it would not have changed the record in any material way in favor of the petitioner. Is that sort of your contrary to the evidence argument? Is that what I understand or tell me if I'm getting it wrong? No, that's exactly right, Your Honor. We, the Appeals Council, we would argue first that the Appeals Council correctly decided first that this evidence, which shows a recent fall, which severely aggravated her pain, therefore separates that seven-month later treatment note from the relevant period and shows a distinct worsening in time. Therefore, we would argue the Appeals Council correctly determined that that note doesn't relate to the relevant period. And even if you find, Your Honor, that, in fact, the Appeals Council should have used a different language, that it did relate but also did not outweigh the ALJ's decision, that's a separate and distinct finding. And given that Dr. Lewis specifically says that this refers to a recent fall aggravating her condition and the addition of the January computerized tomography scan, which shows a wholly different condition than had been imaged in during the relevant period. I'll also note, with respect to that 2016 MRI, that MRI is nearly contemporaneous with the consultative examiner, Dr. Miller's examination. It wasn't done at Dr. Miller's exam. It occurs in roughly the same time. So whatever limitations were caused by that spinal condition, and I'm not a medical expert. I can't read the MRI and say exactly what that means. Whatever limitations were caused by that condition, which is imaged in the 2016 MRI, it resulted in no greater limitations on Ramsey's functioning than those that are found in Dr. Miller's. Dr. Miller does a detailed examination, makes her do all sorts of, you know, stand up, sit down, tie your boots. Can you go like this? So, Mr. Jewett, on the second argument, which is, I think, right at the, maybe the focus of this, it's almost like a harmlessness error or harmless error argument. Have we not said in various decisions that the appeals council, if it committed an error? Can you hear me? Yes, I can. I believe the clerk was saying that the clock is frozen. Oh, yes, it is. You've got a perpetual 48 seconds, Mr. Jewett. I just spoke to the clerk. He tells me the clock is frozen, but I think it's been at 48 long enough that your time has expired, counsel. Did you want to say in summation? Well, let me just ask this question with your indulgence, Judge Pooler. Of course. Have we not said that if the appeals council might conclude that there is not a reasonable probability here that Dr. Lewis's treatment notes would change the outcome, that determination should be made by the appeals council in the first instance? So, you're asking us, you're telling us that it's so clear on this record that the appeals council would find that there's no reasonable probability that the treatment notes would change the outcome, that we don't need to remand it back. But I think that we've suggested that really the better, more prudent course is to let the appeals council figure it out. I'm no expert. I don't know. Well, Your Honor, I would again point you to the appeals council's decision at page two of the record. They did consider these records and they set forth a rationale. And I'm also happy to point out, Your Honor, in the commissioner's brief, we talked about whether there's a specific need from the ACT or regulations for a greater level of detail from the appeals council. And I'll rest on the commissioner's brief on that point because my time is up. However, the appeals council's regulations do not call for any specific detailed analysis. The court has analogized it to a denial of cert. This is not something that requires a lengthy explanation from the appeals council. So your view is that page two responds to my question adequately? Correct, Your Honor. Thank you. Thank you, counsel. Mr. Rochford, you reserve three minutes for rebuttal. Turn on your microphone, Mr. Rochford. Thank you. Yes, the appeals council gave its reasoning in rejecting that opinion. It stated that the reasoning that it felt it was not relevant was because of the dates of the examinations. It said nothing about the relevance of the past imaging that was studied. The government is not allowed to reinvent reasoning that was not given by the lower level determinations. The appeals council said that it rejected this evidence because it occurred after the fact. The appeals council didn't address whether the evidence was properly considered. Therefore, I think that my opponent has made my argument for me as to why remand is necessary in order to evaluate this evidence because we really don't know that the evidence was properly considered. Now, coming back to my second argument, again, we have that the ALJ's decision is not based on substantial evidence. There was no opinion that the ALJ fully relied on that actually gave an RFC compatible with what the ALJ gave. Dr. Miller, who the ALJ said he relied on, actually gave a very different RFC from what the ALJ interpreted in his final decision. This ambiguity, this conflict would merit resolution. We do need a remand in order to get a medical opinion that covers the complete RFC because there was one, the ALJ rejected it, and we are left with no medical support for the ALJ's decision. It is true that Dr. Lewis did not give a detailed RFC in his statement. I asked him for one. I was unable to get it at the time. We should ask again. The judge should send a questionnaire to Dr. Lewis and ask Dr. Lewis, who is at this point the only medical expert who has examined all of the relevant imaging, and we should ask that doctor for his opinion as to the RFC. Mr. Ratchford, can I ask you a question going back to the, I guess we call the second argument that was being framed with opposing counsel, this idea of our scope of review, at least, with respect to the argument that even if we conclude that the appeals counsel was wrong in stating that this didn't, Dr. Lewis's opinion didn't relate back to the state of play in 2016, even if it were considered, it would not render the agency's decision contrary to the weight of the evidence or whatever standard, however it's articulated. My question is this, didn't the district court effectively make that sort of, let's call it a harmlessness analysis, and if so, but by basically concluding, as I read page 10 of the district court's opinion, basically saying it was cumulative, and that's my characterization of it, that it didn't really, wouldn't have really changed much. It says basically the ALJ incorporated Dr. Lewis's findings, and that this new evidence about the RFC was considered, thus negating the necessity for further review by the appeals counsel. And my question is this, if the district court effectively did weigh the evidence, did you argue in your blue brief that that was error? Because we're reviewing the district court's decision directly here, right? So my question is, did you preserve that argument for appeal and challenge what I read the district court as having done? Or, I mean, maybe you disagree with the characterization of the district court. So maybe you could explain to me the two things. Number one, do you think that's what the district court did is engage in the weighing of the evidence? And number two, if you do think that that's what the district court did, point me to where in your blue brief you challenged that. We did not challenge that. I don't believe that the district court weighed that evidence. And in response to this overall question, I would kind of come back to something my opponent stated about Dr. Lewis's report, this finding of pseudoarthrosis. My opponent characterized that as a new diagnosis, but that's not a new diagnosis. That's a new finding based on the old MRI. Dr. Lewis found that the 2016 MRI, again, which predated the ALJ's decision, pseudoarthrosis is non-union of a fusion. Pseudoarthrosis means false joint. It means that where there should have been a fusion, where there should have been bone growth between the two bones, there was nothing. And that was not discussed by any other doctor because no other doctor besides Dr. Lewis reviewed that, and the district court also did not review that. We had discussed that in our brief to the district court, but it was not discussed in the district court's decision. Thank you, counsel. Your time has expired. We'll reserve decision. Thank you for the good argument. Thank you, your honors.